BOYKIN, Sol. Gen., ex rel. JOHNSON et al. v. MORRIS FERTILIZER CO. et al.

(District Court, N. D. Georgia. April 24, 1919.)

No. 127.

1. REMOVAL OF CAUSES ⟐48—GROUNDS OF REMOVAL—SEPARABLE CONTROVERSY.

    Where two parties were made joint defendants in a suit in a state court for violation of a contract in which they joined and of an order of court, there is no separable controversy which will support a removal of the cause by one defendant.

2. REMOVAL OF CAUSES ⟐102—GROUNDS FOR REMAND—DOUBTFUL JURISDICTION.

    Where the jurisdiction of the federal court of a cause removed is doubtful, while the jurisdiction of the state court is unquestionable, the proper course is to remand the case.

In Equity. Suit by John A. Boykin, Solicitor General of the State of Georgia, on relation of Linton Johnson and others, against the Morris Fertilizer Company and the Armour Fertilizer Works. On motion to remand to state court. Motion granted.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

C. T., L. C. & J. H. Hopkins and R. R. Arnold, all of Atlanta, Ga., for relators.

McDaniel & Black and Anderson, Rountree & Crenshaw, all of Atlanta, Ga., for Armour Fertilizer Co.

NEWMAN, District Judge. This is a case removed to this court by the Armour Fertilizer Works, a citizen of the state of New Jersey, on the ground of a separable controversy between it and the petitioner, John A. Boykin, who represents himself as acting for and on behalf of the state of Georgia, and it is now heard on a motion to remand on the grounds, first, that it is not a suit between citizens of different states; second, that there is no separable controversy between the plaintiff and the Armour Fertilizer Works; and, third, that the case is not removable, because it is a proceeding to abate a public nuisance. in the name of the state of Georgia, through the solicitor general, representing the state.

[1] The proceeding which is in question here commenced originally against the Morris Fertilizer Company, a citizen of the state of Georgia, and the Armour Fertilizer Works got into the proceeding by having a subpœna duces tecum served upon it, failing to answer that, and having a rule for contempt filed against it. Pending the proceeding against the Armour Fertilizer Works for contempt for failing to answer the subpœna duces tecum to produce certain books and papers called for in this case against the Morris Fertilizer Company, a contract was entered into February 12, 1918, which is as follows:

"It is agreed between the plaintiff and the relators in the above-stated case and Morris Fertilizer Company, defendant in said case, and Armour Fertilizer Works, as follows:

"1. The present status of the above-stated cause shall be maintained without either side taking any further steps therein until April 15, 1918, at which time the fertilizer plants in Fulton county of the Morris Fertilizer Company and Armour Fertilizer Works shall be shut down, and thereupon the order heretofore granted upon the contempt proceedings relating to the production of certain books and papers, with the approval of the court, shall be revoked, and such contempt proceedings, as well as the contempt proceedings which have been recently brought, seeking to hold the defendant in contempt for the violation of the restraining order, shall be dismissed.

"2. After said date the Morris Fertilizer Company and Armour Fertilizer Works may, if they see fit, take such steps as in their judgment will permit the operation of both of said plants without being a nuisance. Plaintiff and relators have no concern with what steps, if any, such companies may take to accomplish said ends.

"3. Said plants shall not again be operated unless they can be operated without violating the restraining order of force in the above case, and if both of said plants, at the same time, or either separately, cannot be made to so operate, then such plants shall be immediately shut down and shall remain closed.

"4. The defendant will pay the relators' attorney's fees, not to exceed two thousand ($2,000.00) dollars, and actual expenses and costs of the above-stated litigation to date, not to exceed two hundred and fifty ($250.00) dollars.

"5. Nothing herein shall be construed as an admission that either of said plants as now operated is a nuisance.

"6. This agreement is not to be binding until duly executed by the defendant and Armour Fertilizer Works through their several duly and properly authorized agents."

Upon this contract being presented to the court, the Honorable George L. Bell, judge of the superior court of Fulton county, made an order as follows:

"Upon considering the foregoing petition and the exhibit thereto, it is ordered by the court that said petition and the written agreement attached thereto be filed, and made a part of the record in this cause, and entered on the minutes of the court."

Nothing further of importance occurred in this case, apparently, until February, 1919, when a petition for an attachment for contempt was filed, called "Amendment and Rule Nisi for Contempt." This is entitled in the case: "The State of Georgia, upon the Relation of John A. Boykin, Solicitor General, v. Morris Fertilizer Co." It then sets out the petition for the rule nisi for contempt, the fact of the operation of the plants by the Morris Fertilizer Company and the Armour Fertilizer Works, the contract which is shown above, and then alleges that the Armour Fertilizer Works, by virtue of the contract and its participation in the order of the court, became a party to this cause and subject to the jurisdiction of the court, and had entered into a joint and several agreement, as stated, that the two plants should be shut down and neither operated unless they could do so without violating sections 4457 and 5329 of the Code of Georgia. It is then alleged in the petition for contempt that for a considerable time after the date of the contract both of said plants were shut down, and work of some character not known to petitioner and relators was done, or reported to be done, at each of the plants, and as a result either of this work or of other causes unknown to petitioner and relators, said plants, when they resumed operation, did not, for a considerable time, so far as petitioners are aware, constitute a nuisance, violate either of the sections of the Code named in the order, or otherwise emit offensive and injurious gases, odors, or fumes complained of in the original petition. It is then alleged that for the past several months they have been emitting the same type and character of gases, odors, and vapors that were complained of in the original petition, and to the same extent and affecting the same property, property interests, homes of relators, etc.

This petition then prays for an order making the Armour Fertilizer Works a party defendant, and that they show cause on February 11th, why they, as well as the Morris Fertilizer Company, should not be attached for contempt. The Armour Fertilizer Works got into this litigation in a peculiar way, as shown. They seem to have been served with a subpœna duces tecum, according to the pleadings, and, failing to answer that, were attached for contempt. Then, being engaged in the same character of business as the Morris Fertilizer Company, and, according to the record, about to be proceeded against as being guilty of the same character of nuisance as the Morris Fertilizer Company (that is, the emission from their works of noxious gases and odors claimed to constitute a nuisance), they executed this contract.

Thus the way the Armour Fertilizer Works came to be a party to this proceeding, if at all, is certainly novel and peculiar. They were

never served in the case, apparently, and there was never any order by the court, so far as I can see in the record, making them a party defendant in the case, and no pleadings against them until the present proceeding for contempt, and it seems to me to be at least exceedingly doubtful whether the Armour Fertilizer Works has ever become legally and effectually a party to this proceeding. If so, it appears to be certain that they became a party by reason of voluntarily entering into the contract which they did, and which was filed as a part of the record in the case. Whether this contract had that effect or not I need not determine, as that should be decided by the state court.

But, whatever may be true about that, the proceeding which is now pending, and was pending when this removal was had, after setting out what had transpired in the case against the Morris Fertilizer Company, alleges that, at the time the original petition was filed against the Morris Fertilizer Company, the Armour Fertilizer Works was engaged in the manufacture and sale of fertilizers, was operating a plant largely similar to that of the Morris Fertilizer Company and but a short distance therefrom; that the plant of the Armour Fertilizer Works was as great a nuisance, and was guilty of the same acts and character of acts, as the defendant Morris Fertilizer Company. The petition then sets out, as stated heretofore, that petitioners were preparing to start litigation of the same kind and character against the Armour Fertilizer Works, but that a conference was had, which resulted in the contract which is set out above. Then, after setting out that under the contract both plants were shut down for some time, the petition alleges that for several months both plants have been violating said contract and agreement. The petition prays that rule be be issued calling on the Morris Fertilizer Company and the Armour Fertilizer Works, on a date named, to show cause why each of them should not be attached and punished for contempt for violation of the order of the court of February 11, 1918.

This is undoubtedly a joint proceeding on the part of the petitioners against both the Morris Company and the Armour Works. It might, probably, have been a separate proceeding against each; but the petitioners have elected to make it a joint proceeding against the two companies, and, as I understand the case, they charge that each is doing the same thing and together they constitute a nuisance, although each might, by itself, be a nuisance.

One of the main grounds of the motion to remand in this case is that there is no separable controversy here. Evidently the basis of the present proceeding is the contract, which was a joint contract between the two companies and the plaintiff and relators. This contract must be the basis and foundation of any proceeding had against them now, and, the petitioners having chosen to proceed against the two jointly, the fact that they have so elected precludes the existence of a separable controversy. This doctrine is tersely stated by Simkins in "A Federal Equity Suit," page 74, as follows:

"Where the liability of two or more is joint and several, and plaintiff elects to sue jointly, a separable interest of one of the defendants cannot be

set up to obtain Federal jurisdiction"—citing Powers v. Chesapeake & Ohio Railway, 169 U. S. 97, 18 Sup. Ct. 264, 42 L. Ed. 673, and numerous other authorities.

The contract, as above set out, provides in the third paragraph:

"Said plants shall not again be operated unless they can be operated without violating the restraining order of force in the above case, and if both of said plants, at the same time, or either separately, cannot be made so to operate, then such plans shall be immediately shut down and shall remain closed."

It will be noticed that, if either or both of the plants cannot be operated in the manner provided, then both shall be shut down, and, as I have stated above, if the Armour Fertilizer Works is a legal party to this proceeding at all, it is a party because of this joint agreement that, if either shall do wrong, both shall be liable. This being a proceeding against them jointly for violation of this contract and of the order of the court, I do not think there is a separable controversy here, such as would justify its removal to this court.

There is also grave doubt in my mind whether the character of the proceeding is such as can be removed. It is a proceeding for contempt for the violation of an order of a court, and while the argument is that the proceeding relates back through the entire case, and the controversy between the Armour Fertilizer Works and the petitioners is a separate and distinct controversy from that of the Morris Fertilizer Company, yet, after all, it is a proceeding for contempt for violation of an order of the court and the right to remove it, on that account, is questionable at least.

I do not pass upon the question whether or not it is a proceeding by the state of Georgia, or if, construing this case properly, the state is the party proceeding against the defendants, the case should be remanded on that ground; the state not being a citizen. Being entirely satisfied that there is no separable controversy which justifies the removal, it is unnecessary that I should determine this question. .

[2] It being exceedingly doubtful for several reasons whether this court has jurisdiction of this case by removal from the state court, even if I was not entirely satisfied that the case does not involve a separable controversy, it should be remanded. I have before me now two authorities on this subject—one the case of Ernst v. American Spirits Mfg. Co. (C. C.) 114 Fed. 981, a decision by Circuit Judge Lacombe, in which it is said, "Where it is doubtful whether or not there is a separable controversy, and citizens of the state are on both sides of the cause, it will be remanded;" and Nash et al. v. McNamara et al (C. C.) 145 Fed. 541, citing many authorities, in which it is held, "Where the jurisdiction of the federal court of a cause removed from a state court is doubtful, while the jurisdiction of the state court is unquestionable, the proper course is to remand the case."

On the whole, I am satisfied that the case should be remanded to the court from which it was removed, and an order to that effect may be taken.